## VICKSBURG TRACTION CO. *v.* WARREN COUNTY.

[56 South. 607.]

1. STREET RAILROADS. *Franchises. The public. Mandatory injunction.*

> Where the board of supervisors granted to a street railway company the right and privilege to "construct, maintain, and operate a street railway on all of the roads, highways, streets and avenues" of Warren county, and the company built a branch along a public road, and thereafter the supervisors granted to the commissioners of the Vicksburg National Park authority to control the county roads in the park without interfering with the use of the roads by the "public." *Held,* that the words "the public" meant the general public at large, not the street railway company, and the park commissioners had the right to forbid the railway company from laying its line over a public road into the park.

2. MANDATORY INJUNCTION. *Operating railway at a loss.*

> Where a street railway company, operating a street railway system in a city and a branch line under a franchise from the board of supervisors of a county, could not operate the branch road without imperiling the financial stability and existence of the company's entire system the chancery court should not, under the discretion given it by the law, grant a mandatory injunction to compel the company to operate cars on such branch line.

APPEAL from the chancery court of Warren county.

HON. E. N. THOMAS, Chancellor.

Suit in equity by Warren county against the Vicksburg Traction Company to enjoin the company from tearing up and ceasing to use a part of its line. From a decree for complainant the defendant appeals.

The Vicksburg Traction Company owns and operates a street railroad in the city of Vicksburg, and its line of railway, which it undertook to abandon and take up, was an extension of one of its lines of railway in the city of Vicksburg, and was operated as a part of that railway. The franchise under which said extension upon Jackson Road was built was granted by the board of supervisors of Warren county, on the 7th day of April, 1898, to "Percival Steele, his associates, successors, and assigns," granting them the right and privilege to "construct, maintain, and operate a street railway on all of the roads, highways, streets, and avenues" of Warren county. The ordinance further provided in substance, among other things that whenever the board of supervisors shall undertake to pave or improve any road over which said Steele or assigns may have laid their railroad tracks, the said Steele and assigns shall at their own expense make a "like improvement or lay a like pavement between the rails and for a space of one foot on each side of said railway track," and that said Steele and assigns may at any time change the road or line of said railroad, or any part thereof, with the consent of the board of supervisors, and, further, that "nothing in this ordinance shall impair or abridge the control, right, and power vested by law in the board of supervisors of the said county of Warren, and concerning the roads, highways, and streets thereof, and the said board of supervisors shall have the right hereafter to pass any ordinance concerning the use of the roads, highways, and streets, to protect the rights of the public in the premises, as shall be proper, so long as the same does not

annul, abridge, or interfere with the rights and privileges granted of constructing and operating said railway." The bill alleges, among other things, that during the year 1906 one of the successors of Percival Steele laid its railroad tracks along the public road known as the "Jackson Road" from the city limits to near what is known as the Illinois Monument in said county, and strung its wires and operated its cars, and doing everything necessary to a successful operation of an electric street railway line over and on said road, having first obtained permission from the board of supervisors to do so, and inducing said road to go to considerable expense in order to put said road in suitable condition for that purpose, and to get the property-owners along said road to donate parts of their property for the purpose of widening said road and putting it in the desired condition, and that said road has been continuously used and operated since that time, except as hereinafter stated; that said board of supervisors, a few months ago, let a contract to improve said streets with gravel, and said gravel is now being placed upon said road; that said Vicksburg Traction Company, and certain other defendants, without the approval and consent of said board, and over their expressed protest, removed the railroad track along said road with a view of abandoning the operation of said railroad over that part of Jackson Road; that a few months prior to the filing of this bill a large part of said railroad track was torn up and abandoned at the east end thereof, also without the consent or approval of said board, and that the said railroad has not been used or operated since that time. The prayer of the bill was for an injunction restraining the defendant from further tearing up the track, and for a mandatory injunction compelling the defendant to re-lay that part of the track torn up and restore the car service which had been abandoned.

The defenses set up in the answer, and relied upon, are substantially: (1) That the Vicksburg Railway &

Light Company, without opposition from the complainant, had torn up a portion of the track, before the defendants purchased the property; (2) that the purpose for which said extension beyond the city limits had been made was defeated by the action of the board of supervisors in granting to the United States such use of a great part of the road thus granted to the railway company that it prohibited the laying of tracks thereon, the ordinance making such grant being dated September 8, 1903, and providing "that the United States, as represented by the Vicksburg National Military Park Commission, is hereby authorized to enter upon and to use so much of the above-mentioned roads of Warren county, Mississippi, as may be desired and required for the purposes of said Vicksburg National Park, to wit, among others, that part of Jackson Road from a point near the foot of the ridge on which the line of Confederate earthworks was constructed, and inside that line to a point about one hundred yards beyond the outside of the park in that part, about fifteen hundred yards in all, including the part of said road over which jurisdiction has already been ceded to the United States, provided that use of said roads by the United States of America, as represented by the Vicksburg National Military Park Commission aforesaid, shall in no wise interfere with the use of said roads by the public;" (3) that the cost of operating said cars on said track was so large that it threatened the solvency of the entire system, and that the said cars operated along said line were frequently without passengers going and coming; (4) that the said line was located along a cut in the crest of a series of hills, surrounded on both sides by deep ravines and gullies, and there was no prospect that this line would pay expense during the life of the franchise, unless the population beyond the said city limits would enormously increase, and that there are but few families living along said line; (5) that the said roadway in places is so nar-

row that constant danger attends the operation of said railroad; (6) that the franchise granted did not relieve defendants from paying any damages that might be claimed by the abutting landowners, and thus increased the expense of maintaining said railway; (7) that a court, in the exercise of a discretion vested in it, would not imperil the existence of a railroad by imposing such an unnecessary and expensive obligation upon it.

On the trial, the parties entered into the following agreement: "It is agreed that the facts stated in that part of the answer of said defendant which gives a detailed statement of the facts relied on as a defense to this action shall be held, deemed, and treated as true and proven for the purpose of this hearing, and on appeal to the Supreme Court, if an appeal is prosecuted."

*Hirsh, Dent & Landau,* for appellant.

It appears from the allegations of the answer, which are admitted to be true, that the line traverses a roadway through a territory which is very sparsely settled, and is located along a crest of hills surrounded by ravines and valleys; that the houses along said roadway consist mainly of cabins occupied by negroes, who rarely use the railroad; and that on many occasions, there are no passengers either way beyond the city limits; that unless the residents largely increase in number, it can never be made a paying proposition; and that it serves no useful purpose, for the patronage is too small to justify the maintenance of such a line; that it cannot be maintained except "at an enormous loss, which would endanger the security, solvency and continued existence of the Vicksburg Traction Company" which is endeavoring to successfully operate its line within the city limits, and two other lines in the county.

That it had assumed heavy obligations in the city of Vicksburg for paving purposes on account of the Vicksburg Railway & Light Company, which it has succeeded,

and it faced, as the Vicksburg Railway & Light Company, had faced, a continuous deficit in its operation of the said line.

It thus appears that the very existence of this railway is imperiled, and its extinction risked, and its ability to serve the city of Vicksburg seriously impaired, if not destroyed, should it be compelled to maintain the operating of a small railway through a territory with hardly any inhabitants, at a continuous loss.

In the *City of Potwin Place* v. *Topeka Railway Company,* the court said: ''And as we are unwilling to make an order, which is likely to prevent adequate service being rendered to the people of Auburndale addition, we think, in the exercise of our discretion, we should not peremptorily require the operating of the two blocks on Laurel avenue.''

It is therefore established that even a court of law will exercise a discretion, and not impose an intolerable hardship upon a railroad company.

The Southern Railway case is a Mississippi decision, and this court, through Justice Mayes, in a common-law proceeding, stated:

''The answer further claims that this branch road has never earned, does not now earn, or give promise of earning enough to pay its operating expenses, including the expense of maintenance and taxes. These are the substantial questions raised by the answer. On the issue thus made much testimony was taken, the purport of which is that this branch line, on which is located the village of Derma, and which constitutes but a small part of the system owned and operated by the Southern Railway in the state, is being operated at a loss; but the testimony fails to show that the entire system operated and owned within the state is not being operated at a profit. All the testimony in behalf of the railway is addressed to this branch line alone.'' And again the court said:

"All the testimony tending to show that the railroad is being operated at a loss is confined to only this branch of the road, and not to the whole system operated in the state." And the court held:

"When an action is sought to be taken under this statute in a case where the facts show that the whole system of railway owned and operated within the state is operated at a loss, we will then decide that case; but the case as made by this record is not such a one."

Therefore, even this court, in a common-law proceeding, unquestionably intimated that it would grant relief when an entire system is operated at a loss.

Here it is shown that the Vicksburg Railway & Light Company was an insolvent concern, and its property and franchises were sold, at a receiver's sale, and the fact is admitted that the operation of this line would endanger the security, solvency and the continued existence of said Vicksburg Traction Company" (so that not a part of the line operated is endangered but all), and as it will have to pay nearly twenty per cent of its part of the paving in the city of Vicksburg "the strain upon its resources is enormous, and it requires all of its cash and credit to meet its obligations" to said city of Vicksburg.

If a court of law will pause to consider the effect of the operation of a non-paying line, and will exercise its discretion in any orders it may render regarding said line, certainly, a court of equity, with all the facts before it, with a discretion much more unrestricted than that of a court of law, desiring to do the greatest good to the greatest number, and not impose an exorbitant, burdensome and oppressive obligation upon the defendant, even if there were no other equities in the case, would not require it, at the risk of the loss of its life, to maintain a short railway line, which receives no satisfactory patronage, which adds practically nothing to the benefits derived by the people generally from the operation of the

railway, and which traverses a region not susceptible of much improvement, and with but little hope of any further development during the existence of its franchise.

*Carl Fox,* assistant attorney-general, for appellee.

It is wholly unnecessary, I presume, to cite authorities to the point that a public service corporation, engaged in the business of a common carrier, has no right to abandon some portion of its line because that particular portion does not pay a profit. The right to an an abandonment is to be determined upon the question whether the entire road, line or system pays a profit.

Now, it is agreed that the part of the answer of the defendant which gives a detailed statement of the facts relied on as a defense, shall be deemed to be true. That part of the answer begins with the second paragraph from the bottom of page 16 of the record. It is alleged in the answer that this part of the roadway traverses a sparsely settled territory, and one which it is likely will not be thickly settled for a long time to come, and that it cannot be maintained except "at an enormous loss, which would endanger the security, solvency, and continued existence of the Vicksburg Traction Company." It is contended by learned counsel for appellant that by reason of this allegation, and the agreement that the "facts" stated in the answer are true, the appellant had a right to abandon this line of road. That allegation was a mere conclusion. The agreement that the facts stated in that part of the answer which gives a detailed statement of the facts relied on as a defense, shall be held to be true, presents to this court the same question that would have been presented by a demurrer to a plea stating such facts. The truth of mere conclusions is not admitted. The agreement is that the "facts" stated in the answer are true. How can this court say what is an "enormous loss?" The idea of an enormous loss is not only purely relative, but the

100 Miss.—29

idea that the words convey depends largely upon the constitution of mind of the reader, when is "the security, solvency, and continued existence of a corporation" endangered? That, also, is relative, and the idea conveyed depends upon the reader. What might look like danger to one street railway manager, would probably look like prosperity and security to another. The only way by which a defense of this kind can be pleaded so as to not be bad as against a demurrer is by saying that the line cannot be operated except at a loss, and that if compelled to operate this line, the company would make no profit, or would make no more than four per centum, or not more than six per centum, or whatever would be unreasonably low return, upon the whole investment in the railroad system. The only way by which a court can determine the right to abandon any portion of a line, because the expense of operation eats up the profits of the whole system, is by taking testimony as to the facts, that is, the amount invested, the earnings of the system as a whole, the loss in operating the line in question.

WHITFIELD, C.

We think that the provision in the resolution of the board of supervisors, of date September 8, 1903, granting to the commissioners of the Vicksburg National Military Park authority to control the county roads in that park, fairly construed, authorized those commissioners to do what they did in forbidding the electric street railway from laying its lines over Jackson Road into the park. That provision is in these words: "Provided, that use of said roads by the United States of America, as represented by the Vicksburg National Military Park Commission aforesaid, shall in no wise interfere with the use of said roads by the public." The words "the public," in this connection, mean the general public at large, not the street railway company.

Putting this construction upon this proviso, and giving to the detailed statement of facts in the answer, agreed

to be true, their full and fair force, we understand the averment of the answer to be.that this branch road could not be operated without imperiling the financial stability and existence of the entire Vicksburg Traction Company's system—the entire system, not this mere branch of it; and in this view of the case we think the chancery court should have exercised the discretion given it by the law and refused the mandatory injunction.

*Reversed, and bill dismissed.*

PER CURIAM.   The above opinion is adopted as the opinion of the court, and for the reasons therein indicated the decree is reversed, and the bill dismissed.